IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH PLEMON,

                    Plaintiff,

     v.                                       OPINION and ORDER

FRANK BISIGNANO,                            25-cv-309-jdp
Commissioner of the Social Security Administration,

                    Defendant.

---

      Plaintiff Elizabeth Plemon seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Plemon was not disabled within the meaning of the Social Security Act. Plemon asserts numerous objections to administrative law judge (ALJ) Ahavaha Pyrtel's decision, including those related to the ALJ's handling of the medical opinions, Plemon's subjective symptoms, various aspects of the residual functional capacity (RFC) assessment, and the estimate of available jobs that Plemon could perform.

      Plemon has identified many ways that the ALJ's decision could be improved, but most of Plemon's arguments fail to take into account the "extremely limited" nature of the court's role in reviewing the ALJ's decision. *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025). Some of the arguments relate to the ALJ's failure to adequately discuss a particular issue, but missing from Plemon's brief are citations to evidence that would support a finding that her abilities are more limited than what the ALJ found. That type of evidence is needed before the court may order a remand. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

      The court's job is not to nitpick the ALJ's decision, *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024), but only to determine whether it is supported by substantial evidence,

which, the Supreme Court has emphasized, is a low bar, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In this case, many aspects of the ALJ's decision are subject to fair criticism. But the ALJ satisfied her burden in most respects to explain why she believed the evidence supported her conclusion.

There is one error in the decision that requires a remand. The ALJ stated that she found one of the medical opinions to be generally persuasive, but she did not actually adopt that opinion or explain which portions of it were persuasive or why. The court cannot determine from the ALJ's decision how she weighed the opinion, so the ALJ will have to reconsider that issue. The error is not harmless because the opinion could support a finding that Plemon is more limited than what the ALJ found.

BACKGROUND

This case has a lengthy procedural history involving multiple appeals to this court. Plemon applied for disability benefits, alleging disability beginning in November 2017, when she was 36. R. 13.[1] ALJ Joseph Jacobson found that Plemon was not disabled, and the Appeals Council denied review. R. 1–6, 13–26. On appeal, the court remanded the case because the ALJ did not adequately explain his reasoning on multiple issues, including the persuasiveness of certain medical opinions, Plemon's subjective symptoms, and the restrictions in the RFC assessment. R. 550. On remand, ALJ Jacobson held a new hearing, and he again found that Plemon was not disabled. R. 789–807. Plemon appealed to this court, and the commissioner

---

[1] Record cites are to the administrative transcript located at Dkt. 6.

stipulated to another remand, though the parties provided only general reasons for the remand in the stipulation. R. 817.[2]

On the second remand, the case was reassigned to ALJ Pyrtel, who held another hearing and issued the decision that is the subject of this appeal.[3] The ALJ found that Plemon suffered from three severe impairments: cervical and lumbar spine disorder, depression, and anxiety. R. 738. Based on these impairments, the ALJ found that Plemon had the RFC to perform sedentary work, with some additional physical and mental restrictions. As for physical restrictions, the ALJ found that Plemon could do the following:

- stand for no more than two hours of an eight-hour workday;

- walk for no more than two hours of an eight-hour workday;

- alternate between sitting and standing every 30 minutes; and

- balance frequently, which means between one-third and two-thirds of an eight-hour work day, *see* SSR 83-10.[4]

R. 743.

As for mental restrictions, the ALJ found that Plemon could do the following:

- understand, remember, and carry out simple instructions but not at a production rate pace (e.g. assembly line work);

- perform simple, work-related decisions; and

---

[2] Neither party contends that either of ALJ Jacobson's decisions or this court's previous opinion are relevant to this appeal, so the court will not discuss them further.

[3] The parties do not explain why the commissioner held new hearings and decided all issues anew after both remands instead of focusing on the remanded issues.

[4] The ALJ also included restrictions on other physical abilities that are not relevant to this appeal.

- tolerate occasional changes in a routine work setting.

*Id*. Relying on the testimony of a vocational expert, the ALJ found that Plemon could not perform any of her past relevant work, but she was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as order clerk, charge account clerk, and information clerk. R. 752–53.

Plemon now appeals to this court a third time. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Plemon's challenges to the ALJ's decision fall into four categories: (1) medical opinions; (2) subjective symptoms; (3) aspects of the RFC assessment; and (4) the number of available jobs.

### A. Medical opinions

Plemon challenges how the ALJ evaluated the medical opinions related to both her physical abilities and her mental abilities. When evaluating medical opinions, the ALJ is required to consider how well supported the opinion is and whether it is consistent with other evidence in the record. 20 C.F.R. § 416.920c(a); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

1. **Physical abilities**

The ALJ considered six medical opinions on Plemon's physical health: (1) William Fowler, a state-agency consultant and physician who conducted a record review in 2019; (2) Jeffrey Nesta, a state-agency consultant and physician who conducted a record review in 2019; (3) Katrina Hammel, a state-agency consultant and physician who examined Plemon once in 2019; (4) AnnMarie King, a physical therapist who conducted a functional capacity evaluation in 2019; (5) Andrew Floren, a physician who examined Plemon once in 2020 and once in 2022; and (6) Jason Servi, a doctor of osteopathic medicine, who conducted a consultative examination in 2022. The relevant portions of the opinions relate to sitting, standing, and walking, so the court will focus on those portions. The ALJ did not adopt the portions of Fowler's and Nesta's opinions on sitting, standing, and walking, and Plemon does not challenge that portion of the ALJ's decision, so it is not necessary to consider Fowler and Nesta's opinions.

Hammel found the following functional limitations: no more than frequent walking, standing, or sitting during an eight-hour workday. R. 386. The ALJ found the opinion to be generally persuasive. R. 748.

King found the following functional limitations: no more than 35 minutes of sitting at a time; no more than 15 minutes of standing at a time; no more than a total of 3 hours and 21 minutes of sitting over an 8-hour workday; no more than a total of 1 hour and 55 minutes of standing over an 8-hour workday; no more than 4 hours and 45 minutes of working for per day. R. 418, 420. King also found that Plemon would "need to alternate sitting and standing." R. 418. The ALJ found the opinion to be not fully persuasive.

Floren issued a statement in 2020 that he agreed with King's opinion. R. 448. He also checked a box indicating that Plemon was "unable to work in any capacity by her history." R. 428. The ALJ did not find that Floren's opinion was persuasive. R. 750.

Servi offered an opinion in June 2022. In one portion of the opinion, he found the following functional limitations: standing and walking for no more than one hour at a time; sitting for no more than two hours at a time; standing and walking for no more than two hours total in an eight-hour work day; sitting for no more than four hours total in an eight-hour work day. R. 725. In a different portion of the opinion, he found the following functional limitations: sitting, standing, and walking no more than frequently. R. 722–23. The ALJ found that Servi's opinion was "generally persuasive," but she said that "the expanded record warrants a limitation to sedentary exertion." R. 751.

Plemon challenges the ALJ's handling of King, Floren, and Servi's opinions.

### a. King

The ALJ did not adopt King's opinion for the following reasons: (1) Plemon's lawyer had referred her to King; (2) King examined Plemon only once; (3) the opinion appeared to be based on Plemon's subjective complaints; (4) the opinion was inconsistent with Plemon's testimony; and (5) the opinion about how long Plemon could work was conclusory and addressed an issue reserved to the commissioner. R. 749.

Plemon challenges all of the ALJ's reasons, but it isn't necessary to consider all of them. The court will focus on two: (1) King's opinion was inconsistent with Plemon's own description of her limitations; and (2) King's opinion appeared to be based on subjective complaints.

The ALJ was correct that some of King's opinion was inconsistent with Plemon's own testimony. King stated that Plemon could not stand for more than 15 minutes at a time, but

Plemon testified during the 2024 administrative hearing that she could stand for up to an hour. R. 769. Plemon cites no authority for the view that it is unreasonable to reject a medical opinion that is inconsistent with the claimant's own description of her limitations. Plemon makes three other arguments instead.

First, Plemon says that the ALJ did not rely on any inconsistency between her statements and King's opinion. But that is incorrect. When finding that King's opinion was not persuasive, the ALJ observed that it was "not supported by . . . claimant's own reporting of being able to sit, stand, and walk for longer periods of time." R. 749.

Second, Plemon says that the testimony the ALJ relied on was not contemporaneous with King's report: the report was in 2019, and the testimony was in 2024. But Plemon does not explain why that matters. Plemon does not allege that her condition improved between 2019 and 2024, so the passage of time alone does not undercut the ALJ's reasoning.

Third, Plemon says that her statements were not "significantly different" from King's report. Dkt. 14, at 10. That is also incorrect. Plemon stated that she could stand for up to four times longer than what King stated in her opinion.

The ALJ also wrote that "King's conclusions regarding the claimant's ability to sit and stand seem to be based, at least in part, on the claimant's subjective reporting, as the claimant was observed to sit for a total of two hours and 10 minutes during the evaluation and observe[d] to stand for a total of one hour and 45 minutes." R. 749. This reason could have been stated more clearly, but the point the ALJ is making is clear enough when viewed in context. Specifically, King observed during a five-hour evaluation that Plemon was able to sit more than two hours and could stand for slightly less than two hours, but King nonetheless concluded that King could not stand more than 1 hour and 55 minutes and could not sit more than 3

hours and 21 minutes over the course of an 8-hour workday. There is an obvious tension between what King observed and what she found. For example, King did not explain why she found that Plemon could stand for 1 hour and 45 minutes over a 5-hour period and could stand only 10 more minutes over an 8-hour period. In the absence of any explanation to support this finding, it was reasonable for the ALJ to conclude that King must have relied on Plemon's subjective reports and for the ALJ to reject the opinion as not adequately supported.

Plemon says that King was entitled to rely on subjective reports, citing *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), and *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015). But those cases are about psychiatric evaluations, not assessments of physical limitations. It is well established that an ALJ does not owe any deference to a medical opinion based on the claimant's subjective complaints. *Karr v. Saul*, 989 F.3d 508, 511–12 (7th Cir. 2021); *Apke v. Saul*, 817 F. App'x 252, 256–57 (7th Cir. 2020). It is also reasonable to reject an opinion that is conclusory or unsupported. *See Vang v. Saul*, 805 F. App'x 398, 401 (7th Cir. 2020).

The ALJ's decision to reject King's opinion is supported by substantial evidence.

### b. Floren

The ALJ did not adopt Floren's opinion for the following reasons: (1) Floren's "examination of the claimant does not demonstrate significant findings suggesting of work preclusive limitations"; (2) his 2020 examination and opinion were inconsistent with the examination of another physician, Matthew Czechowicz, who had conducted an examination two weeks earlier; and (3) after his 2022 examination, Floren wrote that Plemon did "not exhibit signs [he] normally associated with pain," and the only opinion he could offer about her ability to work was that Plemon stated that her pain precluded her from working. R. 750.

8

The ALJ could have explained these reasons more clearly. The ALJ did not elaborate on her first reason, and she did not explain why Czechowicz's examination findings were more persuasive than Floren's findings. But the ALJ's third reason is supported: after examining Plemon in 2022, Floren wrote in his progress notes that Plemon reported pain in most of her body, but she "does not exhibit signs I normally associated with pain." R. 951. When addressing Plemon's ability to work, Floren wrote that "the best I can say is that she states she is unable to work due to her pain." *Id.* Those statements provided the ALJ with substantial evidence to reject Floren's opinion. Floren offered an opinion that he agreed with King's findings and that Floren was unable to work, but he admitted that he could not substantiate Plemon's pain claims and could only rely on her subjective reports. The ALJ may reject a medical opinion if it is inconsistent with the physician's own findings. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). That was the case here.

### c. Servi

The ALJ wrote the following about Servi's opinion. First, the ALJ noted that Servi offered inconsistent findings regarding Plemon's ability to sit, walk, and stand. R. 750. Second, the ALJ listed various functional limitations in Servi's opinion and observed that they were consistent with Servi's examination findings. The ALJ said little about Servi's sitting, standing, and walking findings except that "limiting the claimant's time on her feet is consistent with Dr. Servi's examination, which revealed bilateral lower extremity muscle strength of 4/5." *Id*.

Plemon is correct that the ALJ's discussion of Servi's opinion is confusing and not well-explained. Servi offered inconsistent findings about Plemon's ability to sit, walk, and stand, stating both that: (1) Plemon could not stand or walk for more than a total of two hours or sit for more a total of four hours; and (2) Plemon could sit, stand, and walk "frequently,"

which he defined to mean as much as two-thirds of the workday, which is more than five hours. R. 722–23, 725. The ALJ acknowledged the inconsistency without explaining how she accounted for it. The ALJ also stated that Servi's opinion was "generally persuasive," but she did not adopt either of his findings on Plemon's ability to sit, walk, or stand. So the ALJ did not build a logical bridge between Servi's opinion and her conclusions regarding that opinion. In fact, it is not even clear what the ALJ's conclusions regarding Servi's opinion were.

This error was not harmless. If the ALJ had adopted Servi's more restrictive opinion limiting Plemon to no more than four hours of sitting, the ALJ would have needed to adjust the RFC assessment, which does not include any sitting restrictions other than the need to alternate with standing. But even if the ALJ had intended to adopt Servi's less restrictive opinion on sitting, that opinion restricts Plemon to sitting "frequently," which is up to two-thirds of the workday. That is still more restrictive than the ALJ's RFC assessment.

There would have been valid reasons for the ALJ to reject Servi's opinion altogether, most notably that it was internally inconsistent. But the ALJ did not do that. Instead, she found the opinion to be generally persuasive. It is impossible to determine from the ALJ's decision which portions of Servi's opinion she agreed with or why, so the court will remand the case for reconsideration of that opinion.

## 2. Mental abilities

The ALJ considered three medical opinions on Plemon's mental abilities: (1) Robert Barthell, a psychologist and state-agency consultant who conducted a review of Plemon's records; (2) Stephen Kleinman, a psychiatrist and state-agency consultant who conducted a record review; and (3) Marcus Desmonde, a psychologist who conducted two examinations of Plemon.

Barthell and Kleinman found that Plemon had mild or moderate limitations in several categories of mental functioning. R. 60–61, 76–77. The ALJ found that the opinions were generally persuasive, but they did not take account of Plemon's increased anxiety with stress. R. 751.

Desmonde submitted two opinions, one based on his examination in April 2019 and one based on his examination in October 2019. In his April 2019 opinion, he found that Plemon suffered from mild or mild-to-moderate limitations in several categories of mental functioning. R. 376. In his October 2019 opinion, he changed some of his findings: (1) mild-to-moderate limitations in interacting with others (rather than mild limitations, as in the April 2019 opinion); (2) moderate limitations in concentration, persistence, and pace (rather than mild to moderate); and (3) moderate-to-marked limitations in managing daily living (rather than moderate). R. 414. The ALJ found that the April 2019 opinion was more persuasive because it was "more consistent with the totality of the evidence, as well as more supported by the claimant's mental status examinations." R. 751. The ALJ also stated that it "seems likely" that some of Desmonde's "more restrictive conclusions" were based on subjective reports. *Id.*

Plemon's arguments focus on the ALJ's handling of Desmonde's opinion. Plemon says that the ALJ did not explain why the April 2019 opinion was more consistent with the evidence, including mental status examinations, and she did not explain why she believed that Desmonde was relying on subjective reports. If the court reads in isolation the paragraph of the ALJ's decision expressly devoted to Desmonde's opinion, Plemon's arguments have traction. In the context of that paragraph, the ALJ offers little more than conclusory statements to support her decision.

11

But the court of appeals has instructed district courts "to read the ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), and "not [to] discount [the ALJ's reasoning] simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). As the commissioner points out, the ALJ explained in other portions of the decision why she concluded that all of Plemon's mental limitations were no more than mild or moderate, R. 740–42, just as Desmonde stated in his April 2019 opinion. Specifically, the ALJ relied on the opinions of Barthell and Kleinmann and Plemon's own statements and activities.

Plemon does not identify any flaws in the ALJ's reasoning in this portion of her decision. In fact, Plemon does not respond to the commissioner's argument. So the court concludes that the ALJ's decision to credit Desmonde's April 2019 opinion over his October 2019 opinion is supported by substantial evidence.

## B.  Subjective symptoms

The ALJ concluded that Plemon's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 748. The question on appeal is whether the ALJ gave a specific reason supported by the record for refusing to fully credit Plemon's statements about her symptoms. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022).

One initial problem with Plemon's argument on this issue is that she does not identify which of her subjective complaints that she believes the ALJ should have credited.[5] Instead, she

---

[5] Plemon does discuss individual statements she made in the context of discussing the ALJ's RFC assessment. The court will address those specific issues in section of the decision about that assessment.

broadly challenges the ALJ's consideration of her subjective complaints. For the purpose of this opinion, the court will assume that the RFC assessment would have been more restrictive if the ALJ had fully credited Plemon's subjective complaints.

The ALJ devoted several pages of her decision to discussing Plemon's subjective complaints. R. 743–48. Plemon is correct that significant portions of that discussion are simply summaries of evidence, which are not a substitute for analysis, as the court explained on Plemon's first appeal to this court. *Plemon v. Kijakazi*, No. 21-cv-148-jdp, 2022 WL 842914, at *3 (W.D. Wis. Mar. 22, 2022). And some of the reasons the ALJ provided were dubious, including that Plemon could have quit smoking so that she could better afford health insurance and that there was no evidence of muscle wasting. But the court of appeals has repeatedly stated that an ALJ's evaluation of subjective complaints must be upheld unless the evaluation is "patently wrong," *see, e.g.*, *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015), so it is enough if one of the ALJ's reasons is supported by substantial evidence. *See Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021). Plemon cites *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006), to support the proposition that remand is required if any of the ALJ's reasons aren't supported, but Plemon is misreading that case. The problem in *Allord* was that the commissioner tried to bolster the ALJ's credibility analysis on appeal with additional reasons not provided by the ALJ. *Id.* So *Allord* is not inconsistent with *Schrank*.

One of the ALJ's reasons for questioning Plemon's subjective complaints was supported by substantial evidence: Plemon rarely sought medical treatment for her conditions. R. 747–48. When evaluating subjective complaints, the ALJ is entitled to consider the type or amount of treatment the claimant has received and whether she complies with a doctor's recommendations. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021); *Murphy v. Colvin*,

13

759 F.3d 811, 816 (7th Cir. 2014). An important caveat to that rule is that the ALJ must consider whether there are reasons besides the lack of need for treatment that kept the claimant away from the doctor, such as the inability to pay for healthcare. *See Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016); *Garcia v. Colvin,* 741 F.3d 758, 761 62 (7th Cir. 2013).

During the administrative hearing, the ALJ did discuss with Plemon what healthcare resources were available to her. R. 770–773. Plemon stated that she did not have health insurance much of the time, but she admitted she had access to a free clinic in the area. R. 772. When the ALJ asked her why she did not take advantage of the clinic more regularly, Plemon said that clinicians told her that there was nothing they could do for her and she should "get a regular doctor." R. 773, 778. But that is inconsistent with Plemon's medical records, which show that doctors at the clinic asked Plemon to return for follow-up appointments to adjust her medication and conduct more testing. R. 391–92. Plemon provided no reason for failing to follow through with those appointments. She also did not explain why she waited until 2019, two years after her alleged disability onset date, to seek treatment at the free clinic.

The court concludes that the ALJ's evaluation of Plemon's subjective complaints is supported by substantial evidence.

## C. Residual functional capacity assessment

Plemon challenges eight different aspects of the ALJ's RFC assessment. The court will address each one in turn.

### 1. Standing, walking, and sitting restrictions

The ALJ found that Plemon could perform sedentary work, with the following additional restrictions related to sitting, standing, and walking; (1) she could not stand or walk for more than two hours total; and (2) she must be allowed to alternate between sitting and

14

standing every 30 minutes. R. 743. Plemon contends that this part of the RFC assessment is ambiguous in three ways: (1) it is not clear whether Plemon is restricted to sitting four or six hours a day; and (2) the restriction regarding alternating between sitting and standing does not specify how long Plemon would be required to sit or stand before returning to the opposite position; and (3) the ALJ did not specify whether Plemon would be required to remain on task while she was standing. The court rejects each of these contentions.

As for how long Plemon can sit over the course of a day, there is no ambiguity. A sedentary job requires the claimant to sit up to six hours a day. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The ALJ found that Plemon could perform sedentary work, and the only restriction on sitting in the RFC assessment (and the only restriction communicated to the vocational expert) relates to the need to alternate sitting with standing.

As for how long Plemon is required to sit or stand before she can alternate, Plemon cites SSR 96-9p, which states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." But the RFC assessment complies with this requirement: Plemon must be allowed to alternate at least once every 30 minutes, and she cannot be required to stand for more than a total of two hours. Plemon cites no authority requiring the ALJ to be more specific than that.

As for whether Plemon is required to be on task when she stands, the ALJ included no allowances for being off task in the RFC assessment, and Plemon identifies no reason to infer that such an allowance was intended. Any ambiguity is resolved by the hearing transcript, which shows that the ALJ informed the vocational expert that Plemon could *not* be taken off task when she stands. R. 783.

### 2.  Obesity

The ALJ briefly discussed Plemon's obesity, observing that no physician found it to be limiting and that the medical evidence showed that obesity had no more than a minimal effect of her ability to work. R. 738. Plemon contends that the ALJ should have discussed how her obesity affects her degenerative disc disease. This contention fails because Plemon identifies no evidence that the ALJ overlooked, and she offers only speculation to support her contention that her obesity limited her more than what the ALJ found in her RFC assessment. *Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020) (ALJ's failure to consider obesity harmless when plaintiff does not explain how obesity worsened her condition); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (speculation that obesity may have worsened another impairment does not satisfy plaintiff's burden of showing error).

### 3.  Medical need for an assistive device

The ALJ gave three reasons for finding that a cane or assistive device was not medically necessary for walking: (1) no doctor had prescribed or suggested a cane; (2) during her April 2019 and August 2020 examinations, Plemon had a normal gait and was not using an assistive device; (3) Plemon did not testify during her 2022 or 2024 hearings that she needed to use an assistive device. R. 746.

Plemon contends that the ALJ overlooked evidence suggesting that she needed a cane and that the ALJ did not provide adequate reasons for finding otherwise. But the medical

records Plemon cites do not suggest that she needed a cane; in fact, many of those records explicitly state that Plemon is able to walk without an assistive device.[6]

The ALJ's reasons for not including a restriction for an assistive device are supported by substantial evidence. Plemon cites *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), to support her argument that the ALJ should not have relied on the fact that no doctor "had prescribed or suggested" the use of a cane. In *Parker,* "the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane." *Id.* The court rejected that reasoning, observing that "[a] cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist." *Id. Parker* does not help Plemon. The ALJ in this case did not rely solely on the lack of prescription. Rather, the more fundamental problem was that no doctor or any medical source had recognized the need for a cane or even recommended its use. "There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." *Best v. Berryhill*, 730 Fed. Appx. 380, 382 (7th Cir. 2018) (internal quotation marks and alterations omitted).

---

[6] R. 59 is the 2019 opinion of a state-agency physician; the opinion states that Plemon "did not require [an] assistive device." R. 382 is a summary prepared by an examining consultant; she stated that Plemon "ambulates with difficulty, but is able to do so without an assistive device." R. 386 is a similar statement from the same consultant. R. 412–13 is the report of a *psychological* consultant who observed without elaboration that Plemon had a "gait disturbance" during the evaluation. R. 419 is a portion of King's opinion in which King observed that Plemon "needed leaning on wall breaks," but this was after "power lifting, shoulder lifting, and bilateral carry"; Plemon did not state that Plemon needed to use an assistive device as a general matter. R. 458 is a summary of a physical examination in which the doctor observed that Plemon's "gait was slow and mildly antalgic"; there is no reference to the use of an assistive device or the need for one. R. 723 is Servi's opinion in which he observed that Plemon "demonstrated normal gait, but had difficulty walking on toes, heels, and performing a squat"; there is no reference to the use of an assistive device or the need for one.

Plemon also cites her own statements that she sometimes uses a cane or leans on other objects for support. R. 180, 199, 208, 244. But the ALJ was entitled to rely on Plemon's own sworn testimony during the 2024 administrative hearing that she can stand for up to an hour and walk for up to 45 minutes. R. 769–70. Plemon said nothing about needing a cane or other assistive device during that testimony. Plemon cites other statements she made during the hearing that she sits down to put her pants on and she leans on a cart when shopping. R. 775–76. But even if the ALJ credited those statements, they do not show that Plemon has a medical need for a cane.

### 4. Headaches

The ALJ acknowledged that Plemon had been diagnosed with migraine headaches, but the ALJ did not include any restrictions related to the headaches for two reasons: (1) the headaches were well controlled with over-the-counter medication; and (2) there was no evidence in the record that Plemon experienced "exacerbations or complications" caused by her headaches. R. 738. Plemon does not dispute that her headaches are controlled with medication, but she says that "relief would not be instantaneous" when she takes medication for a headache, so the ALJ should have considered "how frequently Plaintiff had a headache or migraine, what limits those headaches caused, how long medication took to relieve her pain, and what effect that would have on Plaintiff's RFC." Dkt. 11, at 27.

It is well established that the ALJ does not have to include restrictions in the RFC assessment for impairments that are well controlled with medication. *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005). Plemon cites no authority for the proposition that the ALJ must consider all the other issues she raises. But even if the court assumes that such consideration is required, Plemon's argument fails because she cites no evidence that the ALJ

overlooked related to the frequency of her headaches, the amount of time it took for her medication to kick in, or any of the other issues she lists. Again, it is Plemon's burden to show that the ALJ disregarded evidence that supports her; she cannot rely on speculation. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024); *Hoy v. Astrue*, 390 F. App'x 587, 592 (7th Cir. 2010). Plemon has not cited any evidence, not even her own testimony, suggesting that her headaches would limit her ability to work, so she has not shown that the ALJ erred.[7]

### 5. Combined impact of pain and mental impairments

Plemon contends that the ALJ erred by failing to discuss the combined impact of her pain and mental impairments. She cites her own allegations that "pain is making her anxiety worse," R. 421, and that her "depression [and] anxiety get worse when [she is] tired or in pain," R. 207. She also cites King's statement in her opinion that "[p]ain and anxiety can be a cause and/or consequence of each other." R. 420.

No medical expert is needed to find that pain and mental health symptoms can have a mutually reinforcing effect on each other. But the problem with Plemon's argument is that she does not cite any evidence of any *functional limitations* that those combined effects had, or if there was evidence of functional limitations, that the ALJ failed to account for that evidence in the RFC assessment. "[T]he ALJ didn't conduct her analysis impairment by impairment. Rather, she simply considered the effect of [Plemon's] symptoms on her ability to work, regardless which impairment caused the symptom." *Ball v. Saul*, No. 18-cv-888-jdp, 2019 WL

---

[7] Plemon cites three cases to support her argument, but none are on point because in all of them the ALJ disregarded or mischaracterized evidence that supported the claimant. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJ ignored plaintiff's testimony about limiting effects of her headaches); *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (same); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) (same);  In this case, Plemon has cited no evidence that supports the need for restrictions related to headaches.

3334658, at *3 (W.D. Wis. July 25, 2019). So it isn't clear what Plemon believes the ALJ should have done differently. Simply acknowledging that pain can worsen anxiety or vice versa does not change the evidence of Plemon's actual functional limitations.

The evidence that Plemon did cite was not helpful. Plemon's own statements are vague; Plemon identifies no way that those statements could be translated into a restriction in the RFC assessment. King's statement is simply a general observation; she did not offer an opinion about the combined effect of Plemon's pain and mental health symptoms on her ability to work.

The court concludes that the ALJ did not err by failing to discuss the combined effects of Plemon's pain and mental health symptoms.

### 6. Sleep

Plemon contends that the ALJ erred by failing to discuss whether restrictions should be included for the naps that Plemon takes. She quotes the statement in *Grotts v. Kijakazi* that the ALJ may not ignore "an entire line of evidence." 27 F.4th 1273, 1278 (7th Cir. 2022). But Plemon has not identified an entire line of evidence. She cites one document supporting her need for naps: a function report that asked, "do you take a nap during the day?" R. 182. Plemon checked the box for "yes" and wrote that she naps for "1-2 hrs." *Id.* Plemon did not identify how often she naps or even whether she needs to nap, so the function report would not support additional restrictions in the RFC assessment. Plemon cites no other evidence of her need to take naps, so the ALJ was not required to discuss that issue. *See Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019) (remand was not required when ALJ failed to discuss "conclusory" findings that "would not have been entitled to much weight").

Plemon also cites other records suggesting that she has trouble sleeping. Dkt. 11, at 28 (citing R. 182, 203, 247, 380, 412–13, and 422). But "trouble sleeping" is not a functional limitation. It could *lead* to a functional limitation if it affected Plemon's ability to work during the workday. But the only possible limitation Plemon identifies is napping, and, as discussed, Plemon has not identified evidence suggesting that any napping she does would limit her ability to work.

### 7. Concentration, persistence, and pace

Plemon contends that the ALJ erred by finding that Plemon had moderate limitations in concentration, persistence, or pace but failing to explain why the evidence supported that finding or "what caused" Plemon's "problems" related to concentration, persistence, or pace. Dkt. 11, at 29. This argument fails.

Plemon started off on the wrong foot by focusing on the ALJ's finding related to "concentration, persistence, or pace." As this court has explained numerous times, the phrase "concentration, persistence or pace" is a general category that the Social Security Administration uses to group various abilities related to mental health. By itself, the phrase does not communicate what a claimant can or cannot do.[8] For this reason, the ALJ's RFC assessment does not include restrictions on "concentration, persistence, or pace." That would

---

[8] *See, e.g., Hanley v. Kijakazi*, No. 21-cv-397-jdp, 2023 WL 2569481, at *3 (W.D. Wis. Mar. 20, 2023); *Hamsing v. Saul*, No. 20-cv-1-jdp, 2020 WL 5505657, at *2 (W.D. Wis. Sept. 11, 2020); *Martin v. Saul*, No. 19-cv-795-jdp, 2020 WL 2847526, at *2 (W.D. Wis. June 2, 2020); *Recha v. Saul*, No. 19-cv-317-jdp, 2019 WL 7343420, at *3 (W.D. Wis. Dec. 31, 2019); *Gloege v. Saul*, No. 19-cv-250-jdp, 2019 WL 6001659, at *2–3 (W.D. Wis. Nov. 14, 2019*); Rabitoy v. Berryhill*, No. 17-cv-495-jdp, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018); *Rossenbach v. Colvin*, No. 13-cv-435-bbc, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014).

mean nothing to a vocational expert (or to anyone else). Rather, the RFC assessment addresses more specific restrictions related to various aspects of concentration, persistence, or pace.

Plemon contends that the ALJ failed to explain how the restrictions in the RFC assessment relate to the ALJ's finding of moderate limitations in concentration, persistence, or pace. But that is the wrong question. The question for a reviewing court is whether the RFC assessment "incorporate[s] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (internal quotation marks omitted). That is a case-specific inquiry that requires an examination of the evidence. *See Recha v. Saul*, 843 Fed. Appx. 1, 4 (7th Cir. 2021). So the ALJ doesn't need to explain how her RFC assessment relates to a more general finding so long as she explains how each aspect of the assessment is supported by substantial evidence.

If the plaintiff believes that the RFC assessment is flawed, it is *her* burden to identify medical evidence that would justify restrictions beyond what the ALJ found in her RFC assessment. *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020); *Jozefyk*, 923 F.3d at 498. Plemon did not even attempt to identify such evidence, so she is not entitled to a remand based on any failure to by the ALJ to justify restrictions related to concentration, persistence, or pace.[9]

### 8. Effect of tearfulness on ability to interact with others

Plemon contends that the ALJ should have discussed whether the RFC assessment should include restrictions to reflect the ALJ's finding that Plemon had a mild limitation in her

---

[9] In her reply brief, Plemon contends for the first time that the ALJ erred by failing to include a restriction to tasks that require no more than two or three steps. Dkt. 14, at 21. Plemon forfeited that argument by failing to raise it in her opening brief. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)

ability to interact with others. To support this argument, Plemon cites instances in which she was tearful during medical examinations. This argument also fails.

As an initial matter, a mild limitation on an aspect of mental functioning does not necessarily translate to a restriction on the ability to work. *See Fuller v. Colvin*, No. 23-cv-585-jdp, 2025 WL 211966, at *3 (W.D. Wis. Jan. 16, 2025). Even a *moderate* limitation may not require any restrictions in the RFC assessment. *See Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020); *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015). In this case, the ALJ explained why she did not include restrictions related to an ability to interact with others: the state-agency consultants did propose any restrictions, and Plemon's reported difficulties of interacting with others were sporadic. R. 741. Plemon does not challenge these reasons.

As for Plemon's episodes of tearfulness, Plemon cites no statements from any healthcare provider, herself, or anyone else that her ability to work would be limited by episodes of tearfulness. Again, Plemon relies solely on speculation. Furthermore, many of the records she cites suggest that she is tearful when she discusses her symptoms or the car accident that triggered some of her symptoms.[10] Plemon identifies no reason why she would need to do either of those things at work.

Plemon cites no evidence that tearfulness required medical restrictions, so the ALJ did not err by failing to discuss that issue in her decision.

## D. Number of jobs available

Relying on the testimony of a vocational expert, the ALJ found that Plemon could perform jobs that exist in significant numbers in the national economy. R. 752–53. The

---

[10] R. 242 (became tearful when discussing results of medical testing); R. 247 (became tearful when discussing her car accident); R. 722 (became tearful when discussing her symptoms).

vocational expert estimated the number of positions available nationally for three representative jobs: 40,000 positions for information clerk, 10,000 positions for charge account clerk, and 9,000 positions for order clerk. Plemon argues that the ALJ's finding regarding the number of jobs available is not supported by substantial evidence because new technologies have rendered the information clerk and charge account clerk positions obsolete, so it is not reasonable to infer that there are 50,000 positions are available for those two jobs.

The problem with this argument is that Plemon did not challenge the adequacy of the vocational expert's job estimates during the administrative hearing, so the vocational expert did not have an opportunity to provide the basis for those estimates. Plemon was represented by counsel during the hearing, so her failure to object then means that she forfeited her right to object on appeal. *See Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023).

There is an exception to the forfeiture rule: if there is an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, the ALJ has an independent duty to ask the vocational expert about the conflict, so a claimant may raise that issue on appeal regardless of whether she objected during the hearing. SSR 00-4p; *Overman v. Astrue*, 546 F.3d 456, 463–64 (7th Cir. 2008). Plemon contends that the exception applies here, but that is incorrect. "The *Dictionary*, which provides job descriptions, does not include data as to the number of existing positions associated with each job in the national economy." *Schmitz v. Colvin*, 124 F.4th 1029, 1034–35 (7th Cir. 2024). So the vocational expert's job number estimates could not "conflict" with the *Dictionary*. *See id.* Plemon has not identified a conflict; rather, she is challenging the factual basis of the vocational expert's estimates. Plemon was required to raise such an objection before the ALJ to preserve it for appeal. *See id.*

24

CONCLUSION

The ALJ must reweigh the medical opinions on Plemon's physical limitations to explain how she considered Servi's opinion. Specifically, the ALJ must: (1) explain how the internal inconsistencies in Servi's opinion affects the weight she gives to that opinion; (2) identify which portions, if any, of Servi's opinion that she is crediting; and (3) if the ALJ does adopt some of Servi's opinion, she must explain why. The commissioner's decision is otherwise affirmed.


ORDER

IT IS ORDERED that that the decision denying Elizabeth Plemon's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered January 13, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge